698 So.2d 1201 (1997)
David BOWLES, Petitioner,
v.
Harry K. SINGLETARY, Respondent.
No. 88199.
Supreme Court of Florida.
June 26, 1997.
Rehearing Denied September 11, 1997.
*1202 David Bowles, Tampa, petitioner, pro se.
Susan A. Maher, Deputy General Counsel, Department of Corrections, Tallahassee, for Respondent.
PER CURIAM.
David Bowles petitions this Court for a writ of habeas corpus. We have jurisdiction. Art. V, § 3(b)(9), Fla. Const. Bowles argues that the forfeiture of basic and incentive gain time due to the revocation of his Control Release constitutes a violation of the constitutional prohibition against ex post facto laws. We hold that there is no violation and deny the petition.
In 1990, Bowles was convicted and sentenced to nine years in prison for cocaine trafficking offenses committed on November 21, 1989. On June 28, 1989, the Florida Legislature had enacted a new early release program called Control Release to help alleviate prison overcrowding. Control Release allowed eligible inmates to finish the remainder of their sentences outside of prison while under supervision. The program went into effect on September 1, 1990, and Bowles began receiving credits shortly thereafter. Bowles accepted the terms and conditions of Control Release and was released early on May 5, 1993. However, he failed to report to his probation officer; because of this violation of the terms of his Control Release agreement, his Control Release was revoked in 1994. The Department of Corrections forfeited Bowles' previously awarded basic and incentive gain time due to the revocation and Bowles was returned to prison to finish serving his sentence.
Bowles argues that he had a right to reasonably expect that once his basic and incentive gain time was awarded and he was released, gain time could not be taken away for post-prison misbehavior; at the time of his offenses he could not have contemplated that his gain time would be forfeited if his Control Release supervision was revoked because Control Release had not yet gone into effect.[1] He argues that this forfeiture violates the Ex Post Facto Clauses of the Florida and United States Constitutions[2] and asks that we restore his gain time and release him.[3]
Bowles' argument does not specifically concern the revocation of the prison overcrowding credits (the Control Release credits) which directly resulted in his release from prison. In Bowles' case, those credits were not canceled by any later legislation. Bowles used his Control Release credits to be released early. Upon his release, Bowles was placed on a probation-like supervision program. Then, due to his conduct, the supervision was revoked. The Control Release credits themselves were not revoked, as they had already been used to attain early release. Then after reincarceration due to the supervision revocation, a different credit was forfeited. This forfeited credit was the "regular" incentive and basic gain time credit which had previously been given for his good behavior independent of any overcrowding. Bowles is not contesting his supervision revocation. He is seeking the restoration of his "regular" good behavior gain timenot the original Control Release credits.
*1203 The Department of Corrections argues that it was aware of potential ex post facto concerns and, for that reason, it specifically made Control Release of inmates whose offenses were committed prior to the effective date of the program optional. Bowles' Control Release certificate contains a notice provision providing that only inmates whose offenses occurred after the effective date of the program were subject to mandatory Control Release; other inmates were given the option of accepting early release. See also Fla.Admin.Code R. 23-22.006(25). Bowles signed the acceptance provision.
Control Release was created in 1989 and encompassed numerous statutory sections. See Ch. 89-526, §§ 1, 2, 3, 5, 6, 7, 8, 52, Laws of Fla. Section 947.146, Florida Statutes (1989), described the manner in which eligible inmates would be chosen and supervised. Section 947.146(9) provided that if there were reasonable grounds to believe a releasee had violated the terms and conditions of release, the releasee would be subject to section 947.141; both section 947.146(9) and section 947.141 provided for gain time forfeiture where the release was revoked. Sections 944.28(1) and 948.06(6) were also amended to provide for the forfeiture of gain time upon revocation of Control Release.[4]
Control Release allowed eligible inmates to be released early to help alleviate prison overcrowding. Releasees were instructed that if they complied with the terms of their Control Release for the entire supervisionary period, their sentences would be completely satisfied. § 947.146(8), Fla.Stat. (1989); see also Fla.Admin.Code R. 23-22.008, 23-22.013. Many releasees did not have to report to a probation officer but merely had to refrain from breaking the law. § 947.146(8), Fla.Stat. (1989); see also Fla.Admin.Code R. 23-22.008(3)(d)6., 23-22.013. Others, depending on their criminal backgrounds, had to report to a probation officer, remain drug-free, or abide by other conditions. See Fla.Admin.Code R. 23-22.008(3)(d)6., 23-22.013. Releasees were advised that failure to follow the agreed-upon conditions would result in a return to prison. § 947.146(8), Fla. Stat. (1989); see also Fla.Admin.Code R. 23-22.013. By the time inmates were offered this conditional benefit, the gain time statutes had been amended to make clear that a revocation of Control Release would result in a forfeiture of basic and incentive gain time. §§ 944.28(1), 948.06(6), 947.146(9), 947.141, Fla.Stat. (1989). In addition, basic and incentive gain time was not automatically forfeited when a violation report was filed. All releasees were entitled to a due process hearing in front of a neutral fact-finder. §§ 947.146(9), 947.141, Fla.Stat. (1989); see also Fla.Admin.Code R. 23-22.014. If the releasee was found guilty of violating the terms and conditions of Control Release, his release was revoked. Then, upon his return to prison, the releasee's previously awarded gain time was forfeited.
The Control Release certificate offered to inmates in Bowles' position, whose offenses were committed before the effective date of the Control Release program, provided the *1204 option of choosing not to accept release. See Fla.Admin.Code R. 23-22.006(25). Bowles has made no allegation that he did not wish to be released early or that he was forced to accept release despite his objections. Furthermore, Bowles signed the Control Release certificate acknowledging that "I agree to accept the terms and conditions of Control Release." This constituted a waiver as to any ex post facto claim he may otherwise have been able to argue.
This holding is consistent with our opinions in the area of sentencing guidelines, where we have held that an affirmative election to accept a newly created program waives any potential ex post facto argument the petitioner may have had. See Brown v. State, 487 So.2d 1073 (Fla.1986); Cochran v. State, 476 So.2d 207 (Fla.1985); cf. Joyner v. State, 594 So.2d 328 (Fla. 2d DCA 1992)(holding that acceptance of community control constituted waiver of right to contest supervision upon revocation), approved, 618 So.2d 205 (Fla.1993).
Both the beneficial opportunities and the potential forfeiture provisions of the Control Release program were created together and were a "package deal" offered to inmates. The consequences of Bowles' failure to follow the terms of his Control Release were all part of "the bargain" to which Bowles agreed. The State, therefore, was obligated to return Bowles to prison to finish serving his sentence.
Accordingly, we hold that, by accepting the terms and conditions of early release under the Control Release program, Bowles and other inmates in his position waived any ex post facto argument they otherwise may have had as to the forfeiture of incentive and basic gain time after a violation of Control Release. We deny the petition.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS, and ANSTEAD, JJ., concur.
NOTES
[1] Although we find that Bowles waived his ex post facto argument, we note that at the time of Bowles' offenses in November 1989, all the post-prison supervision programs in effect provided for forfeiture of incentive and basic gain time upon revocation. See §§ 944.28(1), 948.06(6), 944.598(5), Fla. Stat. (1989). In addition, we find that the decision in Lynce v. Mathis, ___ U.S. ___, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), is not applicable to this case.
[2] Art. I, § 10, Fla. Const.; U.S. Const. art. I, § 10.
[3] Because Bowles is no longer in the custody of the Department of Corrections, his habeas petition is technically moot. However, mootness does not destroy a court's jurisdiction when, as here, the questions raised are of great public importance or are likely to recur. See Holly v. Auld, 450 So.2d 217 (Fla.1984).
[4] As amended by chapter 89-526, section 6, section 944.28(1) provided in pertinent part:

If a prisoner is convicted of escape, or if the clemency, conditional release as described in chapter 947, probation or community control as described in chapter 948, provisional release as described in s. 944.277, parole, or control release as described in s. 947.146 granted to him is revoked, the department may, without notice or hearing, declare a forfeiture of all gain-time earned according to the provisions of law by such prisoner prior to such escape or his release under such clemency, conditional release, probation, community control, provisional release, control release, or parole.
(Emphasis added). See § 944.28(1)(note 1), Fla. Stat. (1989).
As amended by chapter 89-526, section 8, section 948.06(6) provided, in pertinent part:
Any provision of law to the contrary notwithstanding, whenever probation, community control, or control release, including the probationary, community control portion of a split sentence, is violated and the probation or community control is revoked, the offender, by reason of his misconduct, may be deemed to have forfeited all gain-time or commutation of time for good conduct, as provided by law, earned up to the date of his release on probation, community control, or control release. This subsection does not deprive the prisoner of his right to gain-time or commutation of time for good conduct, as provided by law, from the date on which he is returned to prison.
(Emphasis added). See § 948.06(6)(note 2), Fla. Stat. (1989).